UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRI JABLONSKI,

                 Plaintiff,

       -against-

SPECIAL COUNSEL, INC.,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/30/2026__

16 Civ. 5243 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Terri Jablonski, brings this action against Defendant, ADO Professional Solutions, Inc., formerly known as Special Counsel, Inc. ("SCI"), alleging (1) age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; (2) libel; and (3) violations of state and federal recordkeeping obligations. *See generally* Third Amended Complaint ("TAC"), ECF No. 59; *see also* ECF No. 67; Mem. at 1, ECF No. 320. Defendant moves for summary judgment on all claims. Mot., ECF No. 319; Mem.; *see also* Opp., ECF No. 324; Reply, ECF No. 342. For the reasons stated below, the motion is GRANTED.

**BACKGROUND**[1]

I.    Factual Background

At all relevant times, SCI was a placement agency that assisted legal departments and law firms in recruiting paralegals, attorneys, and other legal professionals. Def. 56.1 ¶¶ 1–2, ECF

---

[1] Unless otherwise noted, facts in this section are taken from the parties' Rule 56.1 statements, depositions, and declarations. Citations to a paragraph of Defendant's Rule 56.1 statement include Plaintiff's response. When "there are no citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001) (alteration adopted) (citation omitted), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). On a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant. *Id.* at 69.

No. 325-1.[2]  Plaintiff is a college graduate and obtained a paralegal certificate in 1991.  Pl. Decl. ¶ 7, ECF No. 326.  She alleges that SCI discriminated against her on the basis of age (counts two, three, and four), retaliated against her after she complained of discrimination (counts six, seven, and eight), defamed her by making certain comments in SCI's applicant tracking database (count one), and violated state and federal recordkeeping obligations by failing to keep certain records (count nine).  *See generally* TAC.[3]

In January 2013, when Plaintiff was 45 years old, she was invited to SCI's office for an "interview" with SCI recruiter Hillary Ahearn.  Pl. Decl. ¶¶ 2–3.  According to Plaintiff, Ahearn told her that she was placed in a paralegal job but then "changed her mind."  *Id.* ¶ 3.  Plaintiff states that from August 2013 to July 2015, she applied to many paralegal positions advertised by SCI for which she "was more than minimally qualified."  TAC ¶ 44 (stating she applied to 41 paralegal jobs); Pl. Decl. ¶ 32 (stating she applied to over 32 jobs); Def. 56.1 ¶ 10.  She alleges that SCI did not hire her and instead placed younger, underqualified applicants.  *See* TAC ¶¶ 81–99.

According to Plaintiff's various resumes,[4] she worked as a "Litigation Paralegal" at three firms from 1996 to 2005; then, from "2005–Present," she worked as a "Freelance Paralegal/Assistant" at "Non-Profit Agencies/Law Firms."  *See, e.g.*, ECF No. 323-8; *see also,*

---

[2] Plaintiff's 83-page counterstatement does not comply with Local Rule 56.1, which requires, *inter alia*, that the party opposing summary judgment admit or deny each statement of the moving party, and, if necessary, include a "short and concise" statement of additional material facts.  *See generally* Def. 56.1.  Many of Plaintiff's responses "contain lengthy factual arguments that go well beyond the statement to which she was intend[ing] to respond," *Bertuzzi v. Copiague Union Free Sch. Dist.*, No. 17 Civ. 4256, 2023 WL 6211002, at *1 (E.D.N.Y. Sep. 25, 2023), and are "replete with legal argument, conclusory allegations, personal belief and speculation," *Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 351 (D. Conn. 2022).  "Plaintiff's approach defeats the purpose of [Rule 56.1] as it all but precludes the Court from using competing statements of facts to identify the existence and scope of actual factual disputes."  *Id.*; *see also Knight v. Nassau County*, No. 17 Civ. 958, 2019 WL 3817392, at *4 (E.D.N.Y. Aug. 14, 2019) ("[I]t is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto.").  The Court nonetheless exercises its discretion to consider the merits of Plaintiff's claims, to the extent their factual basis is ascertainable and supported by the record.
[3] The TAC does not include a fifth count.  *See generally* TAC.
[4] These include Plaintiff's resume attached to her TAC, ECF No. 323-6; several resumes introduced by Plaintiff during her deposition, ECF No. 323-7; a resume produced by SCI during discovery, ECF No. 323-9; and several draft resumes attached to Plaintiff's declaration in opposition to Defendant's motion, ECF No. 326-2.

*e.g.*, ECF No. 323-7 at 4–5. It is undisputed that Plaintiff's last permanent paralegal job was in 2005. *See* Pl. Dep. at 30:11–31:9, ECF No. 323-4. At her deposition, Plaintiff stated that since 2005, she has worked other types of jobs, including as an administrative assistant, an insurance sales agent, and a retail worker. *See id.* at 40:20–41:4, 46:1–46:9, 106:1–9. Her resumes group her post-2005 employment together and do not specify what experiences she had when, where, and for how long. *See, e.g.*, ECF No. 323-7 at 7–9, ECF No. 323-8 at 2; *see also* ECF No. 323-6. One resume states that from 2008 to 2012, shortly before the period of alleged discrimination, Plaintiff worked as an "Administrative Assistant/Medical Billing Assistant" at the "Cosmetic Center." ECF No. 323-6; Pl. Dep. at 40:20–41:12. Plaintiff characterizes this role as involving "administrative work." *Id.* at 41:1–4; *see* Pl. Dep. II at 49:21–50:2, ECF No. 339-1.

From 2013 through 2015, SCI used an applicant tracking system known as COSMOS, which contained applicants' personal and professional information. Def. 56.1 ¶¶ 2–4; Hugelmeyer Decl. ¶ 7, ECF No. 322. SCI previously used other software platforms for applicant tracking, but whenever it switched platforms, it would migrate the data from the old platform to the new one. *See* Hugelmeyer Decl. ¶ 7; Hugelmeyer Dep. at 182:10–14, ECF No. 323-1.

Prior to August 2013, the COSMOS platform contained information about Plaintiff because SCI had "either placed Plaintiff into employment positions with clients or had received an application from her." Def. 56.1 ¶ 11. Indeed, the evidence shows multiple COSMOS profiles linked to Plaintiff during the alleged period of discrimination.[5] The first profile ("the combined COSMOS profile") inadvertently included data related to three different candidates—Plaintiff, Plaintiff's sister and attorney ("Maria Jablonski" or "Attorney Jablonski"), and another person

---

[5] Plaintiff also had a profile with Legal Support Personnel ("LSP"), a company that shared a parent company with SCI and merged with SCI in December 2014, but it is unclear whether SCI decisionmakers ever viewed her LSP profile. *See* Hugelmeyer Decl. ¶ 29 n.2; Hugelmeyer Dep. at 29:14–24; *see also* LSP Profile, ECF No. 322-3.

from a separate agency that later merged into SCI. *See* Hugelmeyer Decl. ¶ 24 n.1; *see* COSMOS I, ECF No. 322-1. The combined COSMOS profile is associated with the names "Marie" and "Terri," as well as Plaintiff's email address, and contains notes from as early as 2002. *See* COSMOS I; COSMOS Name Lookup, ECF No. 322-2. Another COSMOS profile for Plaintiff appears to have been created in April 2014 and does not include information about any other candidate. *See* Hugelmeyer Decl. ¶ 34; COSMOS II, ECF No. 322-4.[6]

At all relevant times, the combined COSMOS profile reflected negative feedback about Plaintiff's work performance. For example, in 2001, "two different law firm clients" allegedly instructed Alison Hugelmeyer, a placement director at SCI, to terminate Plaintiff's assignment early "for inappropriate conduct, which [Hugelmeyer] recall[s] as being excessive talking." Hugelmeyer Decl. ¶¶ 1, 21–24; Hugelmeyer Dep. at 249:5–20, 250:8–22; COSMOS I at 8. Hugelmeyer subsequently noted that feedback in the COSMOS profile. Hugelmeyer Decl. ¶ 24; *see* COSMOS I at 8. Plaintiff claims that she did not work at and was not fired by Chadbourne Park in 2001, or at least that she did not work for Chadbourne Park "for Special Counsel." Pl. Decl. ¶ 27.

Another entry in the combined COSMOS profile—which came from the records of a different staffing agency that later merged with SCI—states that "Kara Buzga of Millberg Weiss

---

[6] Plaintiff argues that the Court may not consider the information in SCI's applicant tracking systems because (1) "SCI spoliated two thirds of the relevant ESI" (electronically stored information) and (2) "SCI did not authenticate it by a technician as original copies of ESI" under Federal Rule of Evidence 902(14). *See* Opp. at 6. First, Plaintiff provides no evidence of spoliation and instead relies on a factual allegation from Attorney Jablonski's declaration, which the Court struck. *See id.*; Order on Motion to Strike at 8, ECF No. 358. Additionally, discovery has concluded, and the Honorable Ona T. Wang made no findings of spoliation. *See, e.g.*, ECF Nos. 158 (tr. at ECF No. 159), 178 (tr. at ECF No. 187), 192, 204, 215, 235 (tr. at ECF No. 238), 256, 277, 280, 294 (tr. at ECF No. 308); *see also* ECF No. 265. The Court, therefore, denies Plaintiff's request for the Court to draw a negative inference against SCI. *See* Opp. at 31. Second, as to authentication, "even if evidence is not properly authenticated at the summary judgment stage, so long as the evidence 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Black v. Wrigley*, No. 16 Civ. 430, 2021 WL 4932129, at *9 n.5 (E.D.N.Y. Sep. 21, 2021) (citation omitted), *aff'd*, No. 21-2553, 2023 WL 2591014 (2d Cir. Mar. 22, 2023). Plaintiff has not shown that the evidence could not be authenticated at trial. Therefore, the Court considers the ESI in ruling on SCI's motion for summary judgment.

would prefer not to work with [Plaintiff]." COSMOS I at 7; Hugelmeyer Decl. ¶ 29. The entry also notes that after Plaintiff interviewed with a client in October 2000, the client provided "candid feedback" that she was "flaky, weird and asked inappropriate questions." COSMOS I at 7; Hugelmeyer Decl. ¶ 29. Plaintiff states that she "do[es] not recall ever interviewing [with that client]" or "ever working with Kara Buzga or meeting her." Pl. Decl. ¶ 13.

By 2013, the combined COSMOS profile was tagged "NMQ," or "not minimally qualified," an "internal classification used by SCI that was associated with a candidate who[m] a recruiter should be careful about placing." Hugelmeyer Decl. ¶ 26. Plaintiff was tagged NMQ in 2001, and Attorney Jablonski, whose information is also in the combined COSMOS profile, was tagged NMQ in 2008. *See* Hugelmeyer Dep. at 336:7–12; *see also* Hugelmeyer Decl. ¶¶ 25–27.

The second, non-combined COSMOS profile describes a 2014 interaction between Plaintiff and SCI placement director Michelle Ellwood. In April 2014, Ellwood asked Plaintiff for a chronological resume because Plaintiff's resume did not list her experiences in chronological order or "br[eak] out specifically when she did certain work and for how long she might have done [it]." Ellwood Dep. at 145:15–146:10, ECF No. 323-2; Pl. Decl. ¶ 36. The non-combined COSMOS profile states that in a subsequent phone call, Plaintiff informed Ellwood that she "didn't want to come in" to SCI because she "meets with a lot of agencies but never gets placed." COSMOS II at 2. The next day, Plaintiff emailed Ellwood her "Paralegal Resume" and said, "I can always briefly meet with you and fill out the paperwork and application." *Id.* at 1; *see* ECF No. 326-12. Plaintiff never received job information from Ellwood.

In support of her age discrimination claims, Plaintiff attaches information from an internal SCI system identifying candidates that SCI recommended for some of the jobs to which Plaintiff applied. *See* ECF No. 325 ¶ 5; *see generally* ECF No. 325-5. She does not specify the candidates'

5

ages, and based on SCI's emails to clients, many of the suggested candidates had significant paralegal experience (over 10 years) and may have been over 40 years old. *See, e.g.*, ECF No. 325-5 at 10, 62, 76, 85 (referring a candidate with 18 years of experience for several jobs); *id.* at 68, 98, 104 (referring candidates with at least 12, 14, and 15 years' experience). For one job, SCI told a client it was recommending candidates "a little more senior" than discussed but nonetheless forwarded those candidates' resumes to the client. *Id.* at 147.

Plaintiff also alleges that SCI's applicant tracking system contained an algorithm that would "rank lower" candidates with earlier graduation dates. *See* TAC ¶ 20; Def. 56.1 ¶ 18. No evidence supports this claim. To the contrary, Hugelmeyer states that "[b]ased upon [her] vast experience as a user of COSMOS, [she is] confident that COSMOS contained no such algorithm or other type of programming that detected graduation dates or that would automatically 'rank lower' a candidate that had an earlier graduation date." Hugelmeyer Decl. ¶ 12; *see* Def. 56.1 ¶ 18; *see also* COSMOS Manual, ECF No. 325-4 (suggesting no such algorithm). Nor does the record support Plaintiff's claim that SCI recruiters used COSMOS' "parameter searches" and "automatic rankings" to "focus on recent college graduate applicants." TAC ¶ 21. Hugelmeyer states that she has "never known any recruiter at SCI to use [COSMOS] to rank candidates based on age or screen out older candidates" and is "personally unaware of any evidence that would support this accusation." Hugelmeyer Decl. ¶ 14.

On November 26, 2014, Plaintiff mailed a letter to SCI requesting information on who was hired for each job to which she applied and their demographics; she received no response. Pl. Decl. ¶ 10; *see* Nov. 2014 Ltr., ECF No. 326-3. SCI recruiters deny having received this letter. *See* Hugelmeyer Decl. ¶¶ 16–19; *see also* Ahearn Dep. 29:25–30:6, ECF No. 325-9. Plaintiff

6

alleges that in response to the letter, SCI created false applicant profiles for her and "blacklisted and falsely portrayed" her and her sister "as NMQ." Opp. at 26–27.

II.    Procedural History

In August 2015, Plaintiff filed a charge of age discrimination against SCI with the Equal Employment Opportunity Commission ("EEOC").[7]  *See* TAC ¶ 11.  The EEOC dismissed the claim on March 16, 2016, finding no evidence of discrimination.  ECF No. 59-1 at 2.  In May 2016, Plaintiff initiated this action in state court, and in July 2016, SCI removed it to this Court. *See* TAC ¶ 11; Notice of Removal, ECF No. 1.  The parties then engaged in contentious discovery proceedings before the Honorable Ona T. Wang, *see, e.g.*, ECF Nos. 128, 235, 256, 277, 280, 310, after which SCI moved for summary judgment, ECF No. 319.  In opposition, Plaintiff submitted sworn declarations from herself and Attorney Jablonski; SCI moved to strike Attorney Jablonski's declaration and several paragraphs of Plaintiff's declaration, and the Court granted in part and denied in part the motion.  *See* Order on Motion to Strike, ECF No. 358; ECF No. 365.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247

---

[7] In April 2015, Plaintiff filed an administrative charge against SCI claiming discrimination based on citizenship with the United States Department of Justice, Executive Office for Immigration Review, Office of the Chief Administrative Hearing Officer ("OCAHO").  *See* ECF No. 323-11 at 2–5.  OCAHO dismissed Plaintiff's charges on June 9, 2016, finding no evidence of discrimination.  *Id.* at 9.  Plaintiff also brought, and OCAHO dismissed, charges against three other legal staffing companies alleging the same.  *See* ECF Nos. 323-12, 323-13, 323-14.

(emphasis in original).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant.  *Id.* at 248.  The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing specific evidence in the record.  Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  But, if the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce admissible evidence to support the existence of a triable issue of material fact.  *See Celotex*, 477 U.S. at 322– 23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact.  *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted).  In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant and draws all factual inferences in the nonmovant's favor.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).

## DISCUSSION

I.    <u>Age Discrimination</u>

SCI is entitled to summary judgment on counts two, three, and four of the TAC, alleging age discrimination under the ADEA, NYSHRL, and NYCHRL.  *See* TAC ¶¶ 138–63.

A.  Legal Framework

Plaintiff's age discrimination claims under the ADEA and NYSHRL are governed by the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 729 (S.D.N.Y. 2022).  "Under

*McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2024).[8]   A prima facie case of discrimination requires showing:  (1) Plaintiff belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See id.* at 251–52.

For her ADEA and NYSHRL claims, Plaintiff must show that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016).  To succeed on an NYCHRL discrimination claim, however, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).  In other words, an employer is entitled to summary judgment on an NYCHRL claim "only if the record establishes as a matter of law that discrimination played no role in its actions." *Id.* (cleaned up).

   B.  Discussion

      1.  ADEA and NYSHRL

         i.    Prima Facie Case

Plaintiff has failed to meet her prima facie burden under the ADEA and NYSHRL because she has not adduced evidence giving rise to an inference that age motivated SCI's failure to place

---

[8] The NYSHRL was amended in 2019 "to align with the more liberal pleading standard of the [NYCRHL]," but because Plaintiff's "claims arose . . . before the amendment took effect," the Court applies the pre-amendment standard.  *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 363 n.3 (2d Cir. 2025); *see Goldzweig v. Consol. Edison Co., Inc.*, No. 25-89 Civ., 2026 WL 21005, at *1 n.1 (2d Cir. Jan. 5, 2026).

her in a paralegal position.  *See Boyer v. Riverhead Cent. Sch. Dist.*, 343 F. App'x 740, 741–42 (2d Cir. 2009) ("Although the burden of establishing a *prima facie* case is minimal, [the plaintiff] can point to no evidence suggesting that the circumstances of [the defendant's] failure to hire her . . . give rise to an inference of discrimination.").

Plaintiff first contends that the fact that SCI asked her for a passport to complete I-9 paperwork raises an inference of age discrimination.  *See* Def. 56.1 ¶¶ 10, 17, 18.  But asking for information to verify employment eligibility—a requirement imposed by the federal government on all employers—says nothing about whether SCI relied on her age in deciding whether to place her with clients.  Plaintiff also claims that SCI's application asks for a high school graduation date, *see id.*, but according to the exhibit she submitted, that is not true.  *See* ECF No. 325-5 at 3–5.

Plaintiff further argues that she has raised an inference of discrimination because when SCI interviewed her in January 2013, recruiters "didn't follow instructions" in the COSMOS manual. *See* Opp. at 12.  But the COSMOS manual explains how COSMOS works; it does not require recruiters to do anything and does not purport to be a set of guidelines for hiring procedures.  *See* COSMOS Manual.  Furthermore, the cited manual was issued in April 2013, months after the January 2013 interview.  *See id*.

Plaintiff next claims that recruiters regularly met at staff meetings "to avoid leaving an email trail." Opp. at 13.  The fact that recruiters held in-person meetings does not raise an inference of discrimination.  *See* Ellwood Dep. II, ECF No. 325-11 at 31:8–35:12 (Ellwood's deposition testimony that recruiters would meet at staff meetings to discuss open positions, potential candidates, and where certain candidates were in the process).  And Plaintiff's allegation that SCI's applicant tracking system contained an "algorithm" that "rank[ed]" older candidates "lower," TAC ¶ 20, is also wholly unsupported, as discussed above.  *See* Def. 56.1 ¶ 18.

Plaintiff has also failed to identify "statistical evidence sufficient to create a triable factual issue as to whether an inference of discrimination may be drawn." *Purdy v. Town of Greenburgh*, 166 F. Supp. 2d 850, 865 (S.D.N.Y. 2001). Plaintiff submits some evidence about candidates SCI recommended for some of the positions to which she applied, but she does not identify those candidates' ages or describe their qualifications. *See* Opp. Mem 13–20; Def. 56.1 ¶ 18; *see also* ECF Nos. 325-5, 325-7. Nor does she demonstrate that she was similarly situated to them in all material respects. *See Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 411 (E.D.N.Y. 2018). There is no evidence that the candidates had, like her, an NMQ designation, negative client feedback, and/or a resume that did not clearly reflect recent paralegal experience. *See generally* COSMOS I; ECF Nos. 325-5, 325-6, 325-7 (resumes).[9]

Finally, Plaintiff does not claim that anyone at SCI made comments concerning her age or the age of competing candidates. *See Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 Civ. 5474, 2008 WL 857492, at *6 (S.D.N.Y. Mar. 31, 2008). Once, SCI told a client it was recommending candidates "a little more senior" in work experience than what the client was looking for, but these comments do not raise an inference of discrimination where SCI nonetheless recommended the "more senior" applicants and "wanted to get their resumes in front of [the client]." ECF No. 325-5 at 147. In sum, Plaintiff has not met her prima facie burden because she has failed to present evidence giving rise to an inference of discrimination.

Even if Plaintiff had demonstrated a prima facie case of discrimination, Defendant has proffered legitimate, nondiscriminatory reasons for not hiring her. *See Gavigan v. Clarkstown Cent. Sch. Dist.*, 84 F. Supp. 2d 540, 547 (S.D.N.Y. 2000). First, Plaintiff had been tagged NMQ in one of her COSMOS profiles because clients had fired her, not because of her age (which was

---

[9] Plaintiff's response to this is to assert spoliation, which the Court rejects for the reasons stated *supra* note 6. *See* Opp. at 6.

11

below 40 in 2001). *See* Hugelmeyer Decl. ¶¶ 21–27; Hugelmeyer Dep. at 308:19–23. As a result, Hugelmeyer "could not in good faith submit her to another client." Hugelmeyer Dep. at 283:18–20; *see also* Ellwood Dep. at 90:20–91:2 (stating that an NMQ classification "was associated with a candidate who [SCI] would not have staffed"); Hugelmeyer 30(b)(6) Dep. at 76:18–22, ECF No. 323-3 ("When there is a reason not to place a candidate with a client, you would put the status as N.M.Q."). Second, her profiles reflected negative client feedback, an unwillingness to visit SCI, and her admission that she does not get placed by staffing agencies. *See* COSMOS I, COSMOS II.[10] As Hugelmeyer explains, "SCI's clients pay SCI to find qualified employees who not only have the skills and experience that they are looking for, but also who have been proven performers, and if they have worked for SCI in the past, they have done a great job and have good references. Plaintiff did not meet those qualifications in 2013–2015." Hugelmeyer Decl. ¶ 35.

Furthermore, the resume SCI received in 2014 does not reflect recent paralegal experience because it does not state what work Plaintiff had done when, where, and for how long. *See, e.g.*, ECF No. 323-8; *see also* Ellwood Dep. at 146:2–10 (stating that she "would have wanted . . . a resume that broke out specifically when [Plaintiff] did certain work and for how long she might have done certain work"). None of Plaintiff's resumes break out her post-2005 paralegal experience. *See generally* ECF Nos. 323-6, 323-7. In fact, the resume attached to her complaint states that from 2008 through 2012, soon before the period of alleged discrimination, Plaintiff worked as a "PT Administrative Assistant/Medical Billing Assistant," a job title that does not connote paralegal skills. *See* ECF No. 323-6. As Ellwood explains, recent experience is important because SCI seeks candidates "who could come in for a temp job without a significant amount of

---

[10] The ultimate accuracy of the notes in Plaintiff's COSMOS file is irrelevant. The Court must consider what motivated the employer, and whether that motivation was discriminatory, not whether the notes are correct. *See Witek v. City of New York*, 807 F. App'x 52, 55 (2d Cir. 2020).

training," which requires "someone who had done [the relevant paralegal] work recently enough that [the job] would be familiar to them." Ellwood Dep. at 146:15–25; *see* Hugelmeyer 30(b)(6) Dep. at 405:22–406:14. Therefore, there is sufficient evidence of legitimate, nondiscriminatory reasons for SCI's actions.[11]

Plaintiff's purported evidence of pretext, when viewed in the light most favorable to her, is insufficient to withstand a motion for summary judgment. *See Gavigan*, 84 F. Supp. 2d at 248. Her arguments for why SCI's proffered reasons are pretextual, though difficult to parse, *see* Opp. 23–26, largely rely on conclusory assertions that SCI is lying about her COSMOS profile, *see, e.g.*, Def. 56.1 ¶¶ 11, 15 (alleging without evidence that the COSMOS notes were "fabricated" and were "purposely put in the system") or allegations contradicted by her deposition testimony, *see* Opp. at 19 (stating that she "handled legal correspondence" in a medical office from 2008–2012); Order on Motion to Strike at 10 (striking allegations that she performed legal work from 2008–2012 at Cosmetic Center because it contradicted her deposition testimony). Therefore, Defendant is entitled to judgment on Plaintiff's ADEA and NYSHRL age discrimination claims.

### 2. NYCHRL

For the reasons stated above, "[e]ven under the more solicitous NYCHRL standard, summary judgment is appropriate because the record establishes that [age] discrimination did not play a role in [SCI's] employment decisions." *Gittens-Bridges v. City of New York*, No. 19 Civ. 272, 2022 WL 954462, at *16 (S.D.N.Y. Mar. 30, 2022), *aff'd,* No. 22-810, 2023 WL 8825342 (2d Cir. Dec. 21, 2023).

---

[11] Even if SCI did not place Plaintiff in certain roles because they mistakenly believed she was her sister, that still constitutes a nondiscriminatory reason for SCI's decision that has nothing to do with Plaintiff's age. *See* ECF No. 59-2 at 3–4 (SCI's answer to an administrative complaint, stating that Plaintiff may have been "inadvertently mixed with and confused for" her sister); *see* Hugelmeyer 30(b)(6) Dep. at 339:22–339:3, 347:9–18 (explaining why Attorney Jablonski was marked NMQ).

II.    <u>Retaliation</u>

SCI is entitled to summary judgment on counts six, seven, and eight of the TAC, alleging retaliation under the ADEA, NYSHRL, and NYCHRL.  *See* TAC ¶¶ 164–81.

A.  Legal Framework

Plaintiff's ADEA and NYSHRL retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting framework.  A prima facie case of retaliation requires showing: (1) Plaintiff engaged in protected activity; (2) the employer was aware of this activity; (3) Plaintiff suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.  *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006).  "If satisfied, the burden shifts to [Defendant] to proffer a 'legitimate non-retaliatory reason' for the adverse employment decision," and "Plaintiff, then, must 'point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'"  *Caesar v. Riverbay Corp.*, No. 15 Civ. 8911, 2017 WL 6887597, at *9 (S.D.N.Y. Dec. 27, 2017) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002)).  Under the ADEA and NYSHRL, Plaintiff must show that "a retaliatory motive was in fact the but-for cause of those actions."  *Witek v. City of New York*, 807 F. App'x 52, 55 (2d Cir. 2020).

Like discrimination claims, NYCHRL retaliation claims are evaluated more liberally than federal retaliation claims.  *See Goldzweig v. Consol. Edison Co. of New York, Inc.*, No. 25-89 Civ., 2026 WL 21005, at *4 (2d Cir. Jan. 5, 2026).  To prove a NYCHRL retaliation claim, a plaintiff need only show that her employer's conduct "was caused at least in part by retaliatory motives."  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (cleaned up).  Additionally, NYCHRL "takes a broader approach than . . . the ADEA as to what constitutes protected activity

for the purpose of a retaliation claim." *Goldzweig*, 2026 WL 21005, at *4.

### B. Analysis

Plaintiff has failed to make out a prima facie case of retaliation, and on this record, no reasonable jury could find that Plaintiff has satisfied her ultimate burden of demonstrating that SCI took adverse action in response to her November 2014 letter, even under the more generous NYCHRL standard for retaliation claims.

Plaintiff's retaliation claims under Title VII, NYSHRL, and NYCHRL fail because she cannot point to a causal connection between her alleged protected activity—sending a letter complaining of discrimination to SCI—and any adverse action.  In her opposition brief, she describes the adverse actions as "blacklist[ing]" her and her sister through NMQ designations, combining information about different candidates in one profile, and "creat[ing] a false LSP profile." Opp. at 27.  But she has not presented non-speculative evidence that any of these actions occurred *after* she sent her letter to SCI alleging discrimination, rather than, as the record reflects, years before.  *See* Hugelmeyer Decl. ¶¶ 19, 26–27, 29; *see also* COSMOS Name Lookup (stating that the last activity in the combined COSMOS profile occurred in 2010).  And although Plaintiff alleges elsewhere that SCI continued to not place her until at least 2015, she has presented no evidence about jobs SCI filled with other candidates after it received her letter in December 2014. *See generally* Opp.; Pl. Decl.[12]

Moreover, as with her discrimination claims, even if Plaintiff had satisfied her prima facie

---

[12] Additionally, although a certified mail receipt confirms that Plaintiff's letter was delivered to SCI, *see* Pl. Decl. ¶ 10; ECF No. 326-3, SCI recruiters deny knowledge of the letter.  They do not recall receiving the letter, *see* Hugelmeyer ¶ 18; Ahearn Dep. at 29:25–30:6, no internal notes mention the letter, and Plaintiff received no response to the letter, Pl. Decl. ¶ 10.  "[B]ecause there is no evidence that any of the decisionmakers [were] aware of [her] protected activity," there is "no evidence of a causal connection between the protected activity and [SCI's] hiring decision[s]." *Sundaram v. Brookhaven Nat. Lab'ys*, 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006); *see also Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of causal connection." (emphasis omitted)).

burden, SCI has proffered legitimate, nonretaliatory reasons for not recommending Plaintiff to clients—namely, her NMQ designation, negative references in her COSMOS profile, non-chronological resume, unwillingness to meet for an interview, and statement that she does not get placed by staffing agencies. *See generally* Mem. at 8–10. Plaintiff has not adduced evidence that SCI's reasons for not hiring her were pretextual. Therefore, with respect to her ADEA and NYSHRL causes of action, Plaintiff has not raised a triable issue of fact as to whether retaliation was the but-for cause of SCI's decision not to place her with its clients. Nor has she, with respect to her NYCHRL claim, presented a genuine factual dispute as to whether retaliation played a role in SCI's decisionmaking.

Because no reasonable jury could find that retaliation played a role in any adverse action, SCI is entitled to summary judgment on Plaintiff's retaliation claims.

III.    Libel or Libel Per Se

SCI is entitled to summary judgment on count one of the TAC, alleging libel or libel *per se*. *See* TAC ¶¶ 111–37. The Court rejects Plaintiff's argument that SCI's NMQ code and its inclusion of facts about other candidates in her COSMOS profile constitutes libel. *See* Opp. at 29–30.

To recover a claim for libel under New York law, a plaintiff must establish: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 95 (2d Cir. 2017) (citation omitted).

The NMQ designation does not amount to libel. In context, stating that Plaintiff was "not minimally qualified" is an unactionable statement of opinion, not fact. Under New York law, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter

16

how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). "Whether a particular statement constitutes an opinion or objective fact is a question of law." *Id.* The New York Court of Appeals has set forth the following factors for consideration: whether the language "has a precise meaning which is readily understood," whether the statements are "capable of being proven true or false," and whether "either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (citation omitted).

In this case, SCI's statement that Plaintiff was "not minimally qualified" for placement with SCI's clients is a "nonactionable statement[] of opinion," as it is "indefinite, ambiguous, and incapable of being objectively characterized as true or false." *Leone v. Rosenwach*, 245 A.D.2d 343, 343 (1997) (holding that statements that an employee was an "incompetent worker" and "unfit for his job" constituted nonactionable statements of opinion); *see also Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14 Civ. 2065, 2015 WL 13654007, at *7 (S.D.N.Y. Mar. 26, 2015) ("Under New York law, the evaluation of an employee's performance, even an unsatisfactory evaluation, is a matter of opinion that cannot be objectively categorized as true or false and cannot be actionable." (cleaned up)).

The "full context of the communication in which the statement appears" confirms this conclusion. *Mann*, 10 N.Y.3d at 276 (citation omitted). As Hugelmeyer explains, the NMQ designation is "an internal classification . . . that was associated with a candidate who[m] a recruiter should be careful about placing." Hugelmeyer Decl. ¶ 26; *see also* Hugelmeyer Dep. at 338:22–339:3 (stating she put an NMQ code on a "a candidate that she would not want to submit to a paying client"); Ellwood Dep. at 113:19–25 (stating that recruiters used the term NMQ to "refer[]

17

someone who we would not staff"). Thus, the NMQ code communicates SCI employees' opinions concerning whether they "would" staff a candidate, not an objective fact about Plaintiff's qualifications. Plaintiff asserts that NMQ "refers to a lack of college degree," Opp. at 30, but the record does not support this claim. Therefore, the NMQ designation is not actionable.

Plaintiff also points to "statements about Michael[,] a male graduate of Howard University," *id.* at 30, but those statements do not save her libel claim, as they do not "concern[] the plaintiff." *Mann*, 10 N.Y.3d at 276; *see* COSMOS I at 6 ("Steptoe passed on *Michael* due to low GPA" (emphasis added)). She also argues that recruiters may have attributed certain information about her sister to her because the combined profile was associated with both the name "Marie" (her sister) and the nickname "Terri" (Plaintiff). *See* Opp. 29 (alleging only that SCI added "her name on her sister's profile" and . . . "recklessly republished it"). But this falls short of showing SCI published defamatory statements of fact about her. Therefore, her libel claim fails.

IV.    Recordkeeping Violations

Last, SCI is entitled to summary judgment on count nine, alleging violations of various recordkeeping statutes or regulations, *see* TAC ¶¶ 182–196, because Plaintiff lacks a private right of action to enforce the alleged violations.

A.  Federal Law

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275 (2001). Although the ADEA contains a private right of action to enforce its terms, *see* 29 U.S.C. § 626(c)(1), the ADEA itself imposes no recordkeeping obligations. Rather, the ADEA authorizes the EEOC to create regulations governing this matter. *Id.* § 626(a) (providing that the EEOC "shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter"); *see also* 29 C.F.R.

§§ 1627.3, 1627.4 (corresponding regulations).

Nothing in the ADEA, or any other authority, suggests that Congress intended to confer upon individuals a right to enforce the EEOC recordkeeping regulations promulgated pursuant to § 626(a).  *See Sofia v. Esposito*, No. 17 Civ. 1829, 2019 WL 6529432, at \*6 (S.D.N.Y. Dec. 4, 2019) ("A regulation, by itself, may not create a private right of action."); *Olmstead v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002) ("Determining congressional intent to create a right of action is . . . a matter of statutory interpretation . . . , and [a court] cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided."); *see also Reece v. PPG Indus., Ohio, Inc.*, No. 18 Civ. 1466, 2020 WL 13665378, at \*3 (S.D. Ohio Apr. 29, 2020) (concluding, collecting cases, that there is no private right of action to enforce analogous recordkeeping regulations under Title VII).  Therefore, SCI is entitled to judgment on Plaintiff's federal claim of recordkeeping violations.

### B.  State Law

Plaintiff's state law recordkeeping claim fails as well.  Her claim is based on certain provisions contained in New York General Business Law Article 11.  *See* TAC ¶ 189.  However, "Article 11 provides no private right of action." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841, 2015 WL 3750674, at \*3 (S.D.N.Y. June 16, 2015) (discussing cases).  Therefore, SCI is entitled to judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor on all claims and close the case.

SO ORDERED.

Dated: March 30, 2026
      New York, New York

_____
ANALISA TORRES
United States District Judge